IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| WENDY CHEEK, et al., ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | 1:12-CV-981 | |
| ) | | |
| CITY OF GREENSBORO, NC, ) | | |
| ) | | |
| Defendant. ) | | |

| | | |
|---|---|---|
| MICHAEL BROWNELL, et al., ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | 1:12-CV-1311 | |
| ) | | |
| CITY OF GREENSBORO, NC, ) | | |
| ) | | |
| Defendant. ) | | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

These cases raise a number of issues related to compensation and benefits provided to plaintiff-firefighters by the defendant-employer, the City of Greensboro. Before the Court are cross-motions for summary judgment. This Order addresses claims that the City violated various provisions of the Fair Labor Standards Act. To the extent the plaintiffs' claims are based on the City's failure to include certain longevity payments in calculating the plaintiffs' overtime compensation, the Court will deny both parties' motions. Otherwise, the Court will grant the City's motion and deny the plaintiffs' motion.

### 1. Overtime Back Pay Claims

As part of its benefits program for many years, the City operated a longevity program that offered annual payments to employees in recognition of their years of employment. (*See, e.g.*, Doc. 69-11 at 2; Doc. 81-5 at 6; *see also* Doc. 78-23.)[1] Sometime in 2011, several employees informed the City that they believed longevity pay should be included in the calculation of their overtime pay under the FLSA. (*See* Doc. 68-8 at 31-34; *see also* Doc. 70-1 at 2.) From October 2011 through May 2012, the City investigated the employees' concerns and ultimately agreed with the employees, (*see, e.g.*, Docs. 70-1 to 70-5; *see also* Doc. 84-3 at ¶¶ 4-10); the City concluded that it owed $74,320.43 in overtime back pay to 543 affected employees. (*See* Doc. 70-4 at 2.)

In May and June 2012, the City offered overtime back pay to affected employees. (*See, e.g.*, Docs. 70-5, 70-6; Doc. 84-3 at ¶ 10.) Some employees accepted the amounts that the City initially offered them, and others eventually entered into a settlement agreement with the City. (*See, e.g.*, Doc. 68-8 at 48-54; Doc. 70-9.) The plaintiffs in these two cases did not accept the City's offers of overtime back pay and did not enter into a settlement agreement with the City.

The City does not dispute that its failure to include past years' longevity payments in the calculation of the plaintiffs' overtime compensation violated § 207 of the FLSA. (*See, e.g.*, Doc. 80 at 22-29); *see also* 29 U.S.C. § 207. Rather, the City contends that its

---

[1] These claims are brought by the plaintiffs in Case Numbers 1:12-CV-981 and 1:12-CV-1311; the record is the same in both cases. For simplicity, all citations to the record in this Order are to the Court's electronic docket in Case Number 1:12-CV-981, unless otherwise indicated.

2012 offer of overtime back pay mooted the plaintiffs' claims because "the City offered to pay Plaintiffs the entirety of the amounts that Plaintiffs have now filed these lawsuits to obtain." (*See* Doc. 80 at 23.) The plaintiffs contend the case is not moot because the City did not offer to pay the full amount to which each plaintiff claimed to be entitled. (*See* Doc. 81 at 29-31.)

"A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011) (internal quotation marks and alteration omitted). Generally, one "circumstance mooting a claim arises when the claimant receives the relief he or she sought to obtain through the claim." *Id.*; *see also Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 370 (4th Cir. 2012) ("Accordingly, we have found there was no longer any case or controversy when defendants had offered a plaintiff the full amount of damages to which the plaintiff claimed entitlement." (internal quotation marks and alteration omitted)). The claimant need not accept the offer of relief, but rather "the case becomes moot . . . because the plaintiff *could have obtained* through acceptance of the offer all that he could have hoped to obtain through litigation." *Amrhein v. Regency Mgmt. Servs., LLC*, No. SKG-13-1114, 2014 WL 1155356, at *5 (D. Md. Mar. 20, 2014) (opinion of Gauvey, M.J.) (internal quotation marks omitted).

Here, the City's 2012 offer did not include the full relief to which each plaintiff claimed to be entitled. It is undisputed that the City offered to pay the plaintiffs overtime back pay for two years and did not offer to pay the plaintiffs liquidated damages, that in certain circumstances the FLSA authorizes back pay for three years and liquidated

3

damages, *see* 29 U.S.C. §§ 216(b), 255(a), and that the plaintiffs contend they are entitled to back pay for three years and to liquidated damages. Because the City's 2012 offer did not offer to pay "the full amount of damages to which the plaintiff[s] claim[] entitlement," *Warren*, 676 F.3d at 370, it did not moot the plaintiffs' claims.

The City contends that because the plaintiffs are not actually entitled to three years of back pay or to liquidated damages, the case is moot. (*See, e.g.*, Doc. 80 at 24-29.) They cite no case in support of this proposition, which is inconsistent with Fourth Circuit case law determining mootness in the context of settlement offers based on what the plaintiff claimed, not on what the plaintiff was later found to be entitled to recover. *See, e.g.*, *Warren*, 676 F.3d at 370; *Simmons*, 634 F.3d at 763. Even if one assumes that the plaintiffs will ultimately lose on their claims for three years of back pay and for liquidated damages, that does not make their claims for such damages moot.

The City also contends that the plaintiffs cannot recover overtime back pay because they did not mitigate their damages when they did not accept the 2012 offer. (*See* Doc. 80 at 30.) Because the City did not offer to pay the full amounts of the claimed damages, this argument fails for the same reasons that the City's mootness argument fails.

The City did not move for summary judgment on grounds other than mootness and the plaintiffs' failure to mitigate damages. (*See* Doc. 80 at 22-30.) Because the plaintiffs' claims are not moot and because the City's failure to mitigate damages argument has no merit, the Court will deny the City's motions.

4

The plaintiffs did not contend in their summary judgment brief that they are entitled to summary judgment on any aspect of these claims. (*See* Doc. 77 at 23-29.) As noted *supra*, the City did not contend that it is entitled to summary judgment on the merits. In the absence of summary judgment briefing on the issues of the City's liability to the plaintiffs for two years of overtime back pay, the amount of damages the plaintiffs are owed for this two-year period, whether the City is liable for a third year of overtime back pay based on a willful FLSA violation, the amount of damages that the plaintiffs would be owed if the City is liable for a third year, and whether the plaintiffs are entitled to liquidated damages, these aspects of the plaintiffs' FLSA claims will proceed to trial.

To narrow the issues and simplify the trial, the parties are directed to exchange (but not to file) proposed stipulations within 30 days from the date of this Order and to thereafter confer over any disagreements. The Court suggests that the parties consider including, at a minimum, background facts and amounts or calculations, as well as stipulations related to the admissibility of exhibits. If the parties are able to agree on any stipulations, the plaintiffs shall file the stipulations no later than September 1, 2015.

**2. Other FLSA Claims in Case Number 1:12-CV-1311**

The plaintiffs contend that certain of the City's employment policies violated several additional FLSA provisions. Viewing the evidence in the light most favorable to the plaintiffs, the plaintiffs cannot prevail.

**a. Overtime Pay for Excess Hours**

The plaintiffs do not oppose this aspect of the City's motion, (*see* Doc. 81 at 32), and the Court will enter summary judgment for the City as to these claims.

5

### b. Accurate Time Records

The plaintiffs contend that the City failed to maintain time records in violation of 29 C.F.R. §§ 516.2(a)(5), 516.5, and 516.6.[2] (*See* Doc. 81 at 32.) Title 29 of the Code of Federal Regulations requires that employers, *inter alia*, maintain "records containing the . . . [t]ime of day and day of week on which the employee's workweek begins," 29 C.F.R. § 516.2(a)(5), keep payroll records for "at least 3 years," *id.* § 516.5(a), and keep "[b]asic employment and earnings records," including "the daily starting and stopping time of individual employees," for "at least 2 years." *Id.* § 516.6(a)(1).

The City has produced evidence that it keeps the records required by the FLSA. The City's payroll supervisor testified that the City keeps all employee payroll records "for at least three years." (Doc. 78-4 at ¶¶ 1-2.) The "Telestaff" computer program tracks the total number of hours an employee works by recording "start-and-stop times" and maintains that data "for at least three years." (Doc. 78-3 at ¶ 2; *see also* Doc. 79-11 at 20-21.) The "Lawson" computer program also receives and maintains certain employee data. (*See* Doc. 79-11 at 20; Doc. 82-2 at ¶ 13; Doc. 84-2 at ¶¶ 1, 3; *see also* Doc. 71-1 at 3-4.)

In their brief, the plaintiffs rely on the testimony of two City employees who testified that they were unaware of whether the City complied with these requirements. (*See* Doc. 81 at 32 (citing Doc. 68-1 at 33-35 and Doc. 68-7 at 24-26).) The fact that two

---

[2] In their complaint, the plaintiffs cite a number of different sections of the Code of Federal Regulations related to these claims. (*See* Case Number 1:12-CV-1311, Doc. 1 at ¶¶ 66-67.) In their response brief, however, the plaintiffs state only that "29 C.F.R. §§ 516.2(a)(5), 516.5 and 516.6 are controlling" as to these claims. (*See* Doc. 81 at 32.)

6

employees were unaware of City policies related to record retention is insufficient, by itself, to raise a disputed question of fact in the face of otherwise uncontradicted evidence and testimony that the City maintained the records required by the FLSA. The Court will grant the City's motion as to these claims and will deny the plaintiffs' motion as to the same claims.

### c. Providing Compensatory Time in Lieu of Overtime

The plaintiffs contend that the City unlawfully provided compensatory time off instead of paying overtime compensation.[3] (*See* Doc. 81 at 32-33.) Under 29 U.S.C. § 207(o), the City may compensate employees with compensatory time off instead of overtime pay if the City and employees have "an agreement or understanding arrived at . . . before the performance of the work." 29 U.S.C. § 207(o)(1), (2)(A)(ii); *see also Christensen v. Harris Cnty.*, 529 U.S. 576, 579 (2000).

At or near the beginning of employment, all City employees sign an "Acknowledgment of Overtime Compensation Policy," which provides that "City policy is to compensate for overtime hours, whenever possible, by awarding compensatory time (on a 1 1/2 hour compensatory time for 1 hour overtime basis)."[4] (*See* Doc. 79-9; *see*

---

[3] Effective January 1, 2014, the City adopted a policy providing that all City firefighters would be given cash payments for overtime hours rather than compensatory time. (*See* Doc. 71-1; *see also* Doc. 68-7 at 22-23.) The City's January 2014 changes are not at issue here.

[4] The City also publishes its compensatory time policy, "Policy E-4," in its Personnel Manual, which was made available to employees in several ways. (*See* Doc. 82-2 at ¶ 14; Doc. 82-2 at 12-18; *see also* Doc. 68-8 at 19, 24-25; Doc. 78-5 at 3, 33; Doc. 78-6 at 4, 34; Doc. 78-7 at 4, 35.) Policy E-4 became effective on September 12, 2001, and provided that City employees would be given compensatory time "in lieu of payment for overtime." (Doc. 82-2 at 12; *see also* Doc. 82-2 at ¶ 14.) The City revised Policy E-4 in 2011, (*see* Doc. 82-2 at 15-18); that revision

7

*also* Doc. 82-2 at ¶ 14.) The City has produced a copy of this acknowledgement signed by each plaintiff. (*See* Doc. 79-9.) The plaintiffs do not address these signed acknowledgements and make no argument related to this issue.[5] (*See* Doc. 81 at 32-33.)

These signed agreements establish without dispute that the City and the plaintiffs had "an agreement or understanding arrived at . . . before the performance of the work," *see* 29 U.S.C. § 207(o)(2)(A)(ii), that allowed the City to provide compensatory time off instead of paying overtime. The plaintiffs therefore cannot recover any overtime pay allegedly owed under § 207(o)(1) and (2) of the FLSA. The Court will grant the City's motion and will deny the plaintiffs' motion as to these claims.

### d. Annual Leave Policy and Compensatory Time

The plaintiffs contend that certain of the City's annual leave policies unlawfully prevented them from using their compensatory time. (*See* Doc. 81 at 32-35.) The City's annual leave policy, "Policy F-1," provides that employees earn varying amounts of annual leave hours each month depending on their years of service to the City.[6] (*See* Doc. 82-2 at 19-20.) Any of an employee's accumulated annual leave hours "over 240 hours as of February 1 each year [are] converted to sick leave" hours. (Doc. 82-2 at 21.)

---

included the same compensatory time policy in relevant part as the 2001 policy. (*Compare* Doc. 82-2 at 12-14, *with* Doc. 82-2 at 15-18.)

[5] The plaintiffs response brief does contain a heading entitled "[t]he City was not permitted to award compensatory time off in lieu of overtime compensation for overtime work." (*See* Doc. 81 at 32.) However, the plaintiffs' argument under this heading makes no reference to the City's policy of providing compensatory time as overtime compensation and instead addresses the City's annual leave policies discussed *infra*.

[6] Policy F-1 was also published in the City's Personnel Manual. (*See* Doc. 82-2 at ¶ 15; Doc. 82-2 at 19-22); *see also supra* note 4.

At termination or resignation, employees are compensated for unused annual leave hours but receive no compensation for unused sick leave hours.  (*See* Doc. 82-2 at 21; Doc. 68-7 at 17-18.)  The City's firefighters receive 40 hours of holiday leave each six months and risk losing this leave if it is not used.  (*See, e.g.*, Case Number 1:12-CV-1311, Doc. 50 at ¶ 14.)

Policy F-1 implemented a "cascading rule" that requires City firefighters to use compensatory time before holiday leave and annual leave hours.  (*See* Doc. 82-2 at 21, 23-24; *see also* Doc. 82-2 at ¶ 15.)  The plaintiffs contend that the City's enforcement of Policy F-1 violates § 207(o)(5) of the FLSA.  (*See* Doc. 81 at 32-35); *see also* 29 U.S.C. § 207(o)(5) ("An employee of a public agency . . . who has accrued compensatory time off . . . and . . . who has requested the use of such compensatory time, shall be permitted . . . to use such time within a reasonable period after making the request if the use of the compensatory time does not unduly disrupt the operations of the public agency.").

In *Christensen*, the Supreme Court held, in a slightly different context, that "nothing in the FLSA or its implementing regulations prohibits an employer from compelling the use of compensatory time."  *Christensen*, 529 U.S. at 578.  Section 207(o)(5) "imposes a restriction upon an employer's efforts to *prohibit* the use of compensatory time," but it "says nothing about restricting an employer's efforts to *require* employees to use compensatory time."  *Id.* at 585.  While *Christensen* did not hold that an employer can force employees to use annual leave, holiday leave, or other time off before using compensatory time, its logic and reasoning support that view.  *See id.* at 582-86.  The City cited two cases in its summary judgment brief in which courts

9

have so held. (*See* Doc. 80 at 33-34); *see also Local 889, Am. Fed'n of State, Cnty., & Mun. Emps., Council 17 v. Louisiana*, 145 F.3d 280, 284-86 (5th Cir. 1998); *Adderly v. City of Atlanta*, No. 1:08-CV-2111-TWT, 2009 WL 1456575, at *7 (N.D. Ga. May 22, 2009).[7] The Court finds the reasoning of these cases persuasive.

The plaintiffs contend that *Christensen* is distinguishable because the plaintiffs were not given advance notice of Policy F-1. (Doc. 81 at 33.) Even if this were a basis for distinguishing *Christensen*, which is questionable, *see Christensen*, 529 U.S. at 580-86, the undisputed evidence here reflects that the City published Policy F-1 in its Personnel Manual, which was made available to employees in several ways. *See supra* notes 4, 6. No plaintiff has testified that the Personnel Manual was not made available to them, and the evidence indicates otherwise. *See supra* notes 4, 6.

The plaintiffs also appear to contend that Policy F-1 is unlawful because, under § 207(o)(5), the City can restrict the plaintiffs' use of their leave hours only when use of such leave would "unduly disrupt the operations of the [City]." (*See* Doc. 81 at 34 (citing 29 U.S.C. § 207(o)(5)).) The Supreme Court expressly rejected this interpretation of § 207(o)(5) in *Christensen*. *See Christensen*, 529 U.S. at 582-83.

---

[7] The plaintiffs did not address *Local 889* or *Adderly* in their response brief. (*See* Doc. 81 at 32-35.) Rather, they contend that the City is not entitled to summary judgment because Ms. Hammond "conceded" that, in 2012, she became aware that City firefighters were being required to use accrued vacation time before they could use compensatory time and that she understood this to be a violation of City policy. (*See* Doc. 81 at 32-33 (citing Doc. 68-1 at 29-32)); *see also* Doc. 82-2 at ¶ 15; Doc. 82-2 at 23.) The plaintiffs' reliance on this testimony is unclear. Policy F-1 requires City employees to use compensatory time before vacation time, (*see* Doc. 82-2 at 21, 23), and the mere fact that Ms. Hammond forced the Fire Department to comply with Policy F-1 does not, in and of itself, compel the conclusion that Policy F-1 is unlawful.

10

Case 1:12-cv-00981-CCE-JEP   Document 89   Filed 07/10/15   Page 10 of 12

Finally, the plaintiffs contend that the City's decision to change certain parts of its compensatory time policy in January 2014 "is a tacit acknowledgment" by the City that Policy F-1 "was" unlawful. (*See* Doc. 81 at 35); *see also supra* note 3. This assertion is conclusory and speculative and thus insufficient to defeat summary judgment. *See, e.g.*, *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008). In any event, this assertion is factually unsupported. There is no evidence in the record that the City's January 2014 changes to its compensatory time policy altered the City's policy of requiring employees to use compensatory time before holiday leave or annual leave. (*See* Doc. 82-2 at ¶ 16; *see also* Doc. 82-2 at 23-24.) The Court will grant the City's motion and will deny the plaintiffs' motion as to these claims.

## CONCLUSION

In 2011 and 2012, the City discovered that its failure to include employees' longevity pay in the calculation of their overtime compensation violated the FLSA. Based on this violation, the City offered the plaintiffs here an amount of overtime back pay. Because the amounts offered by the City did not offer the plaintiffs full relief, the plaintiffs' claims are not moot. These claims in both lawsuits will proceed to trial.

The plaintiffs in Case Number 1:12-CV-1311 contend that the City's employment policies violated various other FLSA provisions. Because these claims are not supported by any evidence, the City is entitled to summary judgment as to each of these claims.

It is **ORDERED** that:

1. The City's motions for summary judgment in Case Numbers 1:12-CV-981, (Doc. 78), and 1:12-CV-1311, (Doc. 54), and the plaintiffs' motions in Case

11

Numbers 1:12-CV-981, (Doc. 68), and 1:12-CV-1311, (Doc. 47), are **DENIED** as to all claims related to overtime back pay. These claims will proceed to trial.

2. The City's motion for summary judgment in Case Number 1:12-CV-1311, (Doc. 54), is **GRANTED** as to all other FLSA claims as stated herein, and the plaintiffs' motion, (Doc. 47), is **DENIED** as to the same claims.

3. The parties shall exchange proposed stipulations within 30 days from the date of this Order and thereafter confer as stated herein.

4. The Court will enter judgment once it has resolved all aspects of the pending summary judgment motions or when judgment is otherwise appropriate.

This the 10th day of July, 2015.

_____
UNITED STATES DISTRICT JUDGE